HENRY S. CRANE v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

May 24, 1901.

Nos. 12,508—(95).

**Judgment notwithstanding Verdict—Negligent Servant Warned.**

In an action against a railroad company for the negligence of its servants operating a train, where the jury find generally for the plaintiff, and, under Laws 1895, c. 324, also find that a certain employee named in the verdict was guilty of the negligence which occasioned the injury, such finding excludes, by necessary implication, the negligence of every other employee on the train, and, if the evidence fails to support the negligence of the employee named, judgment for the defendant is required under Laws 1895, c. 324.

**Evidence.**

Evidence in this case considered, and *held* to show that an engineer of a freight train running on the road was exercising ordinary care, and not negligent in the stoppage of the train, whereby, under the claim of plaintiff, the latter was thrown down and injured while passing over the top of the same, in obeying the orders of his conductor.

Action in the district court for Hennepin county to recover $2,000 for personal injuries. The case was tried before Harrison, J., and a jury, which rendered a general verdict in favor of plaintiff for $1,791.66 and the following special verdict: "We further find that the engineer was guilty of the negligence which caused plaintiff's injury." On motion, judgment notwithstanding the ver-

1 Reported in 86 N. W. 328.

dict was ordered for defendant. From a judgment entered pursuant to this order, plaintiff appealed. Affirmed.

*F. D. Larrabee,* for appellant.

*F. W. Root,* for respondent.

LOVELY, J.

Action for injuries sustained by plaintiff, a freight brakeman, through the alleged negligence of the other employees of defendant while operating a train. Verdict for plaintiff, with a specific finding that the engineer's negligence occasioned the injury. Defendant moved for judgment notwithstanding the verdict, which was granted. Plaintiff appeals from the judgment.

Plaintiff was rear brakeman on a freight train running from Minneapolis to North La Crosse, on the River Division of defendant's road. He was required to ride in the caboose when not actively engaged in his duties, and to obey the orders of his conductor. His train consisted of twenty-nine cars, ten of which were equipped with air brakes, and placed in sequence next to the engine. The remaining cars were not provided with air connections, and required the application of hand brakes to aid in the stoppage of the train. An engineer and fireman were on the engine. A conductor and head brakeman, with the plaintiff, constituted the remaining service of the train. Train orders were received at Hastings to run to Red Wing to meet a passenger train known as the "Fast Mail." Etter is a station midway between Hastings and Red Wing, having the usual side tracks incident to such places. The accident in which plaintiff was injured occurred in the daytime near Etter, during the efforts of the engineer to stop the train, which, under the claim of plaintiff, was stopped too quickly, while he was going over the top of the same upon the running board, whereby he was thrown upon the car by the sudden jar from the alleged negligent stoppage of the train.

At the conclusion of the evidence, defendant, under the provision of Laws 1895, c. 324, requested the court to direct the jury to return the name of the servant or servants whose negligence caused plaintiff's injury, if they should find for the plaintiff. In addition to the general verdict for the plaintiff, the jury found as follows:

"We further find that the engineer was guilty of the negligence which caused plaintiff's injury."

Upon this special finding the verdict must be sustained, if at all; for, by necessary implication, the negligence of every other servant on the train was excluded, so that the judgment depends upon validity of plaintiff's claim that the engineer, in the negligent stoppage of his train, was the author of his injury. No rules controlling the movements and operation of the train were established, except by inference from custom shown through defendant's servants; the evidence goes no further in this respect than to show that engineers, when approaching stations at which they are to stop, commence at the mile board to shut off steam, and allow the train to run a short distance before air is applied, thereby allowing the slack of the train to run in, so that, when air is applied, violent, sudden jerking of the train is avoided. Evidence was also received to show a custom, when a freight train was ordered to run by an intermediate station without stopping, for the conductor, whose place is ordinarily in the caboose, at the rear end of the train, to be out at the mile board, and give signals to the engineer to go ahead, if not required to stop. The engineer upon seeing these signals would respond with two blasts of the whistle, and proceed on his voyage, without stoppage. There was no evidence of a custom requiring the engineer to stop at a station, when ordered previously to run by it, if he did not, under such circumstances, see the conductor, or receive clearance signals from him. But there was evidence to show that engineers, when not receiving such notice from the conductor to go ahead at the mile board, would give the two blasts of the whistle and proceed.

Upon the interpretation by the engineer of his duty, based upon such proofs of prevalent custom, the plaintiff relies to establish a positive duty on his part, when receiving a signal to stop, after passing the mile board, to adopt the method usually pursued in approaching stations where it was his duty to stop. When $2\frac{1}{2}$ miles from the station of Etter, and while the train was running at the rate of thirty-five miles an hour, the conductor discovered a hot box on one of the cars near the engine. He told the plaintiff that he would go ahead over the train and give the engineer

orders to stop at Etter, and directed the plaintiff to take a jack weighing thirty-five pounds, with a pail of dope, and follow him over the train, so as to be ready when it stopped at Etter to put in a brass and fill the hot box with the proper preparation used in such cases. The conductor then went out upon the running board, and passed over the same as rapidly as possible, giving signals for the engine to stop. About the time the mile board was passed, the engineer, who could not see the signals of the conductor, gave two blasts of the whistle, indicating that he was going ahead, and did not have any knowledge of the signals to stop until at a point five-eighths of a mile from the station. In the meantime the plaintiff took the jack, put an iron bar through its handle, swung it over his shoulder, and, with a pail of dope, started forward along the running board on the top of the train, behind the conductor, whom he saw ahead, signaling to the engineer to stop. He heard the two blasts of the whistle, from which he must have known that the engineer did not observe the conductor's signals, and intended to run by Etter. The situation of the engineer in his cab did not permit him to discover any signals, but the fireman, on the advantageous side of the curve, discovered for the first time the signals of the conductor at the point five-eighths of a mile from the station. As soon as the fireman observed the signals, he turned to the engineer and told him to stop. The engineer states that as soon as he received this notice he immediately adopted the usual course for a station stop, except that he put on a little more air than usual. The plaintiff, who had advanced along the running board three cars, accoutered with the jack and pail as above stated, through the violence of the jar caused by the stoppage of the train was thrown down and injured. There was evidence of the proper method in such cases for the engineer to adopt when he received an emergency signal or order to act unexpectedly, in which case he was to use his best judgment in applying air to bring the train to a stop as soon as he could consistently with safety. It must be adopted as a proper conclusion from the evidence in favor of the plaintiff that the quick application of air by the engineer would necessarily cause a jerking of the rear cars in the train, from the sudden running in of the slack.

Upon this evidence the contention of the plaintiff is that it was the duty of the engineer, after receiving the signals through the fireman, to adopt the usual custom pursued in approaching stations where he was required by orders to stop. No such inference is, in our opinion, warranted. His orders required him to run by the station. He had given the information, by proper signals, that he was going to do so, which was all that was possible, owing to his inability to observe signals for which he was watching, and did not discover until he had run nearly half a mile past the mile board; hence the unexpected signal to stop must necessarily have been understood as given for an emergency which required him to use his best judgment in the use of air. He certainly was not required to take notice of the peculiar situation of plaintiff, for he could have no knowledge of it. We are left in the dark as to the effect of air in securing the stoppage of the train within specific distances, but from the fact that the train did not, in fact, stop until it ran some four thousand feet beyond the station, it would not seem that the conduct of the engineer was very unusual. At all events, as was well known to the brakeman, who was incumbered with the jack on his shoulder, and the pail of dope, in his progress over the train, the engineer must have had to make a different and more sudden stop than the usual one at stations.

If, as claimed, the engineer should have stopped at Etter according to the usual way for station stoppages, upon his failure to observe any clearance signal from the conductor, no evidence was introduced to establish such a rule, and, without proof, we must not assume its existence, to convict him of negligence; for it would be in positive conflict with his previous orders to run by that station. Plaintiff, as well as the conductor, seems to have placed a practical interpretation upon the duty of the engineer in this respect. The conductor, within the knowledge of plaintiff, began to signal for a stop before the mile board was reached, keeping on after the go-ahead signals of the engineer. The signals by the conductor, when conveyed to the engineer, cannot be regarded in any other light, under the evidence, than an emergency order that imposed the duty upon him to act according to his best judgment. The distance the train ran after he acted upon these signals before

it was brought to a stop, and the fact that no damage was done to any portion of the train, do not indicate that there was an exceedingly sudden stop, although the jar was such as to throw the plaintiff upon the running board, which may have been caused, in a measure, by the manner in which he was accoutered, as well as by the jerking occasioned by the acts of the engineer. But to devolve upon the latter, acting on plain orders, and under such conditions, without having any knowledge of the peculiar and unanticipated danger of plaintiff, the same care as when no unexpected stop was required, does not seem consistent with duties demanded of him in making an emergency stop, where protection of property, and perhaps life, involves prompt and energetic action.

The same evidence that would justify a verdict against the defendant under the special finding against the engineer would justify a verdict directly against him. Placed as this servant was on the engine, and required to act promptly with reference to his duty to stop under emergencies, we should not attribute negligence for the course pursued; neither should the defendant be made liable for damages which must be based entirely upon the same conclusions that would convict the engineer of misconduct. Every one knows that, in handling freight trains, the stoppage of the same is attended with more or less jerking, and no one knew this better than the plaintiff himself. While we do not pass upon the issue of contributory negligence, yet, between plaintiff and the engineer, it seems far more reasonable to attribute this accident to a lack of consideration for his own safety by plaintiff, than to any positive failure of duty by the engineer, who was, as is usual with this class of servants, faithfully protecting his master's property, and obeying signals of apparent importance sufficient to require prompt action.

In our opinion, the evidence fails to support the finding of the jury that the defendant was negligent, and the judgment appealed from must be affirmed.